IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QUINTON TABRON,** | **CIVIL NO. 1:CV-11-1200** |
| Petitioner | (Judge Rambo) |
| v. | |
| **WARDEN RONNIE HOLT,** | |
| Respondent | |

# M E M O R A N D U M

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Quinton Tabron ("Tabron"), an inmate confined at the United States Penitentiary at Allenwood ("USP-Allenwood") in White Deer, Pennsylvania. Tabron alleges that his constitutional rights were violated in the context of a disciplinary proceeding. For the reasons that follow, the petition will be denied.

## I.   Facts

On February 2, 2010, at approximately 8:20 a.m., Acting Assistant Health Services Administrator ("AHSA") J. Simonson was exiting the Health Services Department when he noticed multiple inmates in the corridor in front of Health Services. (Doc. 18-1 at 20.) He asked the inmates sitting on the ground to stand up and/or move into the waiting area. (*Id*.) Tabron, who had been standing in the hallway, became confrontational with AHSA Simonson, and stated, "who are you,"

and then instructed another inmate to sit back down. (*Id*.) AHSA Simonson attempted to diffuse the situation by telling Tabron that he was not one of the inmates in question. (*Id*.) In response, Tabron began making comments to the approximate fifteen (15) inmates in Health Services such as, "I'm a DC inmate you think I care who you are. You don't know what your [sic] doing," and "he can do whatever he wants." (*Id*.) AHSA Simonson then gave a direct order to Tabron to come over to the grill where he was standing in order to get Tabron's name. (*Id*.) Tabron's response was, "I'm a fucking DC inmate you think I give a shit who you are, I can do whatever I want." (*Id*.) In addition, as Tabron started to walk away from the grill, he began encouraging the rest of the inmates coming into the corridor to do the same. (*Id*.) AHSA Simonson gave Tabron another direct order to walk with him to the Lieutenant's office, to which Tabron complied. (*Id*.) However, as they were walking down the corridor Tabron made additional comments such as, "What the hell are you looking at, you act like you ain't never had to answer to a black man before." (*Id*.) Even after AHSA Simonson directed him to stop, Tabron continued to make similar comments. (*Id*.)

As a result of this incident, Tabron was issued an incident report charging him with Engaging in or Encouraging a Group Demonstration, in violation of Section 212 of the Bureau of Prisons' ("BOP") disciplinary code; Refusing to Obey an Order of Any Staff Member, in violation of Section 307; and, Insolence Towards a Staff

2

Member, in violation of Section 312. (*Id*.) The incident report was delivered to Tabron at approximately 6:00 p.m. on February 2, 2010. (*Id*.)

An investigation was conducted on February 3, 2010, commencing at 8:00 a.m. (*Id*. at 21.) The investigating officer, Lieutenant T. Slodysko, advised Tabron of his rights relative to the disciplinary process. (*Id*.) Tabron stated that he understood his rights. (*Id*.) In addition, he expressed a fair attitude during the course of the investigation. (*Id*.) He stated of the incident that AHSA Simonson was telling one of the inmates that he could not sit on the floor outside Health Services, and that he was speaking to him in an aggressive tone. (*Id*.) Tabron said that the inmate was sitting on the floor because he had a bad back and could not stand for long. (*Id*.) He added that he was probably mouthing off to AHSA Simonson to a certain extent, but that he was in no way trying to entice anyone to do anything. (*Id*.) Further, he asserted that he did not refuse an order from AHSA Simonson and instead walked with him to the Lieutenant's office. (*Id*.)

After completing his investigation, Lieutenant Slodysko concluded that the incident report supported the charge of Insolence Towards Staff and minimally supported the charge of Refusing an Order of Staff. (*Id*.) Lieutenant Slodysko did not believe that the incident report supported the charge of Engaging in or Encouraging a Group Demonstration, however, the matter was transferred in its entirety. (*Id*.) As a result, Tabron was placed in administration detention pending action by the Unit

Disciplinary Committee ("UDC") and/or Disciplinary Hearing Officer ("DHO").  (*Id*.) Lieutenant Slodysko then referred the matter to the UDC.  (*Id*.)

The UDC held a hearing on February 4, 2010 at 1:30 p.m.  (*Id*. at 20.)  At the hearing, Tabron was advised of his rights and stated that he understood them.  (*Id*.) Further, Tabron stated, "I want the video reviewed."  (*Id*.)

After reviewing the matter, the UDC recommended a sanction of fifteen (15) days of disciplinary segregation based on the severity of the charge, and referred the matter to the DHO for further hearing.  (*Id*.)  Also, at that time Tabron was provided with a copy of the "Inmate Rights at Discipline Hearing" form, which informed him that since he was charged with a violation of BOP rules or regulations, the matter was being referred to the DHO for disposition.  (*Id*. at 23.)  Tabron refused to sign this form, as noted by witness Correctional Counselor J. Grill.  (*Id*.)

On this same date, Tabron was also provided with a copy of the "Notice of Discipline Hearing Before the DHO" form.  (*Id*. at 25.)  Tabron declined the services of a staff representative, but requested a witness, inmate James Tolan.  (*Id*.)  Again, Tabron refused to sign the form, as noted by witness Correctional Counselor J. Grill. (*Id*.)

The DHO held a hearing on March 2, 2010.  (*See id*. at 27-29.)  At the hearing, Tabron first acknowledged that he understood his rights before the DHO.  (*Id*. at 27.) He waived staff representation and witness testimony, and made the following

4

statement: "They called me over for a TB shot.  There was an old man with chronic back pain.  The only way I can prove this[ ] is with the video.  I didn't say all that." (*Id*.)  He presented no documentary evidence for the DHO to consider.  (*Id*.)

The DHO relied on the incident report and investigation, as well as Tabron's statement, to conclude that, by a greater weight of the evidence, Tabron had committed the Code 212 violation, Engaging in or Encouraging a Group Demonstration.  (*Id*. at 5.)  Specifically, the DHO concluded the following:

> The DHO believed for Tabron to interject himself into the circumstances of another inmate to be supportive of the encouraging a group demonstration infraction.  When Mr. Simonson told inmates sitting in the Health Services waiting area to stand, Tabron specifically told another inmate that he could remain sitting.  When Simonson attempted to explain to Tabron this was not appropriate, Tabron became argumentative and took a self-proclaimed leadership in front of the other inmates in the area.  With this, the DHO upheld the Code 212 infraction.  The refusing an order and insolence infractions were expunged as any of these behaviors were believed encompassed within Tabron attempting to control the confrontation with Simonson.  The DHO recognized Tabron's request to the UDC that video surveillance be reviewed.  This, in conjunction with his testimony at this hearing, showed that he was looking for some form of audio assistance in regard to his interaction with Simonson.  The DHO was knowledgeable and advised Tabron audio surveillance was not available from video surveillance of this space.

(*Id*. at 29.)  Tabron was sanctioned with thirty (30) days of disciplinary segregation.

(*Id*.)

## II.  Discussion

The BOP disciplinary process is fully outlined in the Code of Federal Regulations, Title 28, Sections 541 through 541.8.[1]  These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5.  Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.  28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.7.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  (*Id.*)  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing.  (*Id.*)  Because Tabron was charged with Engaging in or Encouraging a Group Demonstration, an offense in the high severity category, the matter was referred for a disciplinary hearing.

---

[1]  The BOP revised this section of Title 28 at 28 C.F.R. §§ 541 through 541.8, effective June 20, 2011.

High category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*. 28 C.F.R. § 541.3. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.[2] *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

In his petition, Tabron challenges the sufficiency of the evidence used to find him guilty of the Code 212 violation. Specifically, he claims that he was prohibited

---

[2] In the initial response to the habeas petition, Respondent argued that the court should deny the petition based on a lack of subject matter jurisdiction because Tabron's challenge to his disciplinary report sanctioning him with 30 days of disciplinary segregation does not constitute a challenge to the length or fact of his imprisonment. (Doc. 9.) In reply, Tabron asserted that he was denied parole due to the disciplinary report. (Doc. 10.) As a result, the court directed Respondent to further respond to the habeas petition. (Doc. 11.) In the further response, Respondent asserts that BOP counsel had a teleconference with counsel for the United States Parole Commission about this matter, and the Commission's counsel informed BOP counsel that it was unable to determine what impact, if any, the incident report had on the result of Tabron's parole hearing conducted on April 27, 2011. (*See* Doc. 18 at 9.) Therefore, in an abundance of caution, in the further response Respondent addresses the merits of the petition due to Tabron's assertion with respect to denial of parole. (*Id*.) In light of these assertions by both Tabron and Respondent, the court will likewise address the merits of the petition.

7

from presenting video surveillance as documentary evidence. In addressing Tabron's petition, the court will address all of the procedural requirements in Tabron's case.

### A. Sufficiency of the Evidence

As stated above, Tabron contests the sufficiency of the evidence relied upon in finding him guilty of the Code 212 violation. (Doc. 1 at 4.) The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id*.

In the instant case, Tabron alleges the evidence was not sufficient for a finding of the Code 212 violation. (Doc. 1.) However, the record belies this assertion. The DHO specifically noted that he considered the incident report and investigation, as well as Tabron's own statement. (Doc. 18-1 at 27-29.) The DHO credited the

reporting officer's account of the incident over Tabron's, and found the charge to be supported based on the greater weight of evidence cited in the report. (*Id*. at 29.) The DHO also recognized Tabron's request to the UDC that video surveillance be reviewed, in that Tabron was looking for some form of audio evidence corroborating his account of what he said to AHSA Simonson. (*Id*.) The DHO advised Tabron that audio surveillance was not available from the video surveillance of the Health Services area. (*Id*.) In light of this evidence, the court finds that there was "some evidence" to support the DHO's decision. The incident report and investigation, as well as Tabron's statement, providing an account of Tabron's engaging in or encouraging a group demonstration, confirm that the DHO acted with a sound evidentiary basis. *Hill*, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Tabron's claim that there was insufficient evidence to support the DHO's decision.

### B. Notice of Charges and Investigation

The record demonstrates that Tabron received adequate notice of the incident report from the investigating officer. (Doc. 18-1 at 20.) Under 28 C.F.R. § 541.5(a), "A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the

incident report within 24 hours of staff becoming aware of your involvement in the incident." *Id*. The record in this case reflects that Tabron received notice of the charges against him at 6:00 p.m. on February 2, 2010, within 24 hours of the incident which took place at 8:20 a.m. that same day. (Doc. 18-1 at 20.)

Additionally, the record reflects that the charges against Tabron were promptly investigated. (*Id*. at 21.) Following the issuance of the incident report, a prompt investigation must be undertaken. 28 C.F.R. § 541.5(b). However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief). The record reflects that a BOP official, Lieutenant Slodysko, conducted an investigation on February 3, 2010, approximately 24 hours after the incident occurred. (Doc. 18-1 at 21.) In his report, the investigator noted that he advised Tabron of his rights and interviewed him about the incident. (*Id*.) He noted that Tabron displayed a "fair" attitude. (*Id*.) Lieutenant Slodysko handed Tabron a copy of the incident report at the time of the interview. (*Id*.) Since the record shows that an investigation was conducted by a BOP official in a prompt manner and Tabron was timely delivered the incident report, the court concludes that

Tabron was not prejudiced by a violation of BOP regulations such as failure to conduct an investigation. Thus, the petition will be denied with respect to any challenge to the notice of the charges and investigation.

### C. Representation at DHO Hearing

The record reflects that Tabron was given the opportunity to have staff representation at the DHO hearing. (*Id*. at 9-14.) It is noted that a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceedings. *See Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996). *See also Bermudez v. Holt*, No. 1:09-CV-0741, 2010 WL 55713, at *5 (M.D. Pa. Jan. 4, 2010). Rather, due process requires that inmates be provided with assistance only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. In this case, it is documented that Tabron waived his right to the staff representation at the DHO hearing. (Doc. 18-1 at 27.) The DHO report also indicates that at the outset of the hearing, Tabron was advised of his rights and he indicated that he understood those rights. (*Id*.) As there is no allegation that Tabron is illiterate, and the issues involved in the case were not complex, the petition will be denied with respect to any challenge to staff representation.

### D.     Statement, Witnesses, and Documentary Evidence

The record reflects that prior to the DHO hearing, Tabron was advised of his rights with regard to making a statement and presenting witness testimony and documentary evidence, and indicated that he understood. (*Id.*)  First, the court notes that Tabron did make a statement. (*Id.* at 4.)  There is nothing in the record reflecting that Tabron was prevented from providing further testimony.  Further, with respect to witnesses, it is noted initially that the DHO is not required to call witnesses.  "The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available.  However, the DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials."  28 C.F.R. § 541.8(f)(2).  Here, the DHO noted that before the UDC, Tabron had requested a witness, inmate James Tolan, but prior to the beginning of the DHO hearing, Tabron advised the DHO that he no longer required the witness testimony from inmate Tolan.  (Doc. 18-1 at 28.)  Further, as set forth above, the DHO was not required to call witnesses at all.  And finally, with respect to documentary evidence, despite Tabron's request to have video surveillance reviewed in support of his plea, the DHO noted that it was in fact audio surveillance that Tabron was looking for to corroborate his denial of the charges, but that any video

12

surveillance would not provide audio surveillance. (*Id*. at 29.) The DHO did rely, however, on the incident report and investigation, as well as Tabron's statement, in making his decision. As a result, the court cannot find that the lack of witness testimony and documentary evidence at the DHO hearing resulted in a violation of Tabron's due process rights. The petition will be denied with respect to any challenge to a right to make a statement and present witness testimony and documentary evidence.

### E. Sanctions

The record reflects that the sanction imposed by the DHO is within the limits prescribed in BOP regulations. (Doc. 18-1 at 29.) The sanctions that may be imposed upon a finding of guilt of a high category offense include, *inter alia*, recommend parole date rescission or retardation, forfeiting earned statutory good time, and up to 6 months of disciplinary segregation. 28 C.F.R. § 541.3. Tabron is not entitled to relief on this ground because the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, Tabron's penalty (30 days of disciplinary segregation) plainly falls "within the expected perimeters of the sentence imposed by a court of law," and does not "[impose] atypical and significant hardship on [petitioner] in relation to the

13

ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 485 (1995). Therefore, because the sanction imposed in this case falls well within the regulatory scheme for such disciplinary infractions, the petition will be denied with respect to any challenge to the sanction imposed.

## III.  Conclusion

For the above stated reasons, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated:  June 21, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QUINTON TABRON,** | **CIVIL NO. 1:CV-11-1200** |
| **Petitioner** | **(Judge Rambo)** |
| v. | |
| **WARDEN RONNIE HOLT,** | |
| **Respondent** | |

# **O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

                                        s/Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

Dated:  June 21, 2012.